## 21268. CRAWFORD v. THE STATE.

DECIDED MAY 12, 1931.

*A. S. Perry*, for plaintiff in error.

*B. T. Castellow, solicitor-general, Bond Almand*, contra.

LUKE, J. W. J. Crawford was convicted of committing an assault with intent to murder, by shooting C. H. Cannington with a pistol. He excepts to the judgment overruling his motion for a new trial. Special ground 2 of the motion complains of the following excerpt from the charge of the court: "The State insists, as the court understands, that at the time of the alleged shooting that C. H. Cannington's pistol was on the seat of the car, and that he was making an effort to get it when he observed what he thought was the intention of the defendant to shoot him, and that he made an effort to get his pistol, but did not succeed in time to protect himself, and the State insists as to whatever C. H. Cannington did was in self-defense." Movant contends that the undisputed testimony of all the witnesses, as well as the defendant's statement, is to the effect that "C. H. Cannington had his pistol in his hand at the time he was shot," and that the charge of the court that "the State insists, as the court understands, that at the time of the alleged shooting that C. H. Cannington's pistol was on the seat of the car" is "an erroneous opinion of the court," unsupported by any evidence in the case. We quote from the testimony of C. H. Cannington: "I would not swear whether it was cocked or not, but it was my intention to cock it, and it was my intention to get my pistol and shoot him (defendant) if I could see him. . . At the time I was shot I had my pistol in my hand. I was not pointing it at anybody. If I could have seen him (defendant) I would have shot him." W. H. Crawford, sworn for the defendant, testified: that defendant walked towards the automobile in which Cannington was seated; that Cannington pointed his pistol at defendant and followed him around the car, and that

defendant jumped back and shot Cannington. R. L. Woods, sworn for the defendant, testified: "Crawford reached there when Cannington was sitting, and he raised his gun, and Crawford jumped back and shot. . . Cannington drew his gun on Crawford before the shot was fired." V. L. Crawford, sworn for the defendant, testified: "Cannington had his pistol when father came to the door and throwed his pistol on father. Father snatched his pistol out of his coat-pocket, jumped back, and fired." The defendant stated to the jury: "As I walked around there . . he (Cannington) pulled his gun on me, and I jumped back and shot." Martin Franklin, sworn for the State, testified: "I do not know whether Mr. Cannington had a pistol in his hand at the time he (defendant) shot or not." Steve Taylor, sworn for the State, testified: "Cannington got his pistol from between him and Dunaway . . when Dunaway told me to look out and let him get out." Taylor further swore, in effect, that when the defendant approached the automobile with his pistol in his hand, Dunaway told witness to let him get out. In view of the other testimony in the case, that the shooting did not occur until the defendant had snapped his pistol several times at Cannington and had jumped behind the automobile, the testimony of Taylor, reasonably construed, is in effect that Cannington got his pistol before he was shot. Tom Dunaway, sworn for the State, testified: "I do not know in what position Cannington had his pistol at the time the shot was fired." This witness further testified that he took a pistol out of Cannington's hand after he had been shot.

The defendant's main contention was that after he and Cannington had had an argument and some words about a settlement between them, he, defendant, went to his home and got his books and was approaching the automobile in which Cannington was sitting, when Cannington, suddenly and without provocation, drew a pistol on him, and he, defendant, shot in self-defense. The State's main contention was that the defendant suddenly presented his pistol at Cannington and snapped it several times, and then jumped behind the automobile and shot Cannington without provocation.

"It is error to give to the jury a charge not authorized by the evidence; and where, in a criminal case, the evidence introduced by the accused would, if believed by the jury, have warranted his acquittal, and the effect of such a charge was necessarily to give

to the State the benefit of a theory to which it was not entitled, a new trial should result." *Rooks* v. *State,* 119 *Ga.* 431 (46 S. E. 631). In the case of *Shannon* v. *State,* 147 *Ga.* 172 (93 S. E. 86), the conviction was reversed because the court charged the jury upon the theory that the defendant "made a threatened assault" upon a woman and stabbed and killed a man who interfered with him, when "there was no evidence of any effort or threat on the part of the defendant to make an assault as indicated in the charge," but, on the contrary, there was positive evidence that he did not. "It is error for the trial judge to tell the jury that the defendant, who is charged with the murder of his wife, 'says, in the first instance, that he was enraged at the conduct of his wife,' when it does not appear either from the evidence or his statement that he made any such statement or contention. This is so for the reason that the judge should not give to the jury an instruction not warranted by the evidence in the case or the statement of the defendant." *Burley* v. *State,* 158 *Ga.* 849 (1-a) (124 S. E. 532).

It appearing from the record in the case at bar that the court charged, as the contention of the State, a theory that was denied by the positive testimony of C. H. Cannington himself, refuted by the other State's witnesses, and contradicted by the defendant and his witnesses, the judgment of the trial judge must be reversed.

Several of the remaining grounds of the motion for a new trial have not the unqualified approval of the trial judge, and those that have his approval disclose no reversible error, and present no question that is of special interest or that is likely to recur upon another trial of the case. Since the case is for trial again, the general grounds of the motion for a new trial will, of course, not be decided. *Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*